## NOVATION AGREEMENT

**THIS NOVATION AGREEMENT** (this "Agreement") is entered into as of _____ July 18th, 2001 _____

**BY AND AMONG:**

**The International Telecommunications Satellite Organization** ("INTELSAT"), an international organization established by the Agreement Relating to the International Telecommunication Satellite Organization (the "INTELSAT Agreement") and the Operating Agreement relating thereto, done at Washington, D.C., on 20 August 1971, with offices located in Washington, D.C., U.S.A.,

**and**

**Intelsat U.K., Ltd.,** a company incorporated under the laws of England and Wales (the "Company"),

**and**

**LIBTELCO** (the "Customer"), incorporated in ___ LIBERIA ___, and having an office and place of business at

___ LYNCH STREET, P.O. BOX 10-9039 1000 MONROVIA 10 LIBERIA ___

(collectively, sometimes hereinafter referred to as the "Contracting Parties").

**WHEREAS:**

1.  The INTELSAT Assembly of Parties under the INTELSAT Agreement, Meeting of Signatories and Board of Governors have taken certain decisions in order to provide for the restructuring of INTELSAT by means of the transfer of substantially all of the assets and liabilities of INTELSAT to Intelsat, Ltd. or its subsidiaries (the "Privatization") upon satisfaction of certain conditions precedent which are set forth in the Restructuring Agreement (as defined herein).

2.  In accordance with the Restructuring Agreement, the Contracting Parties desire to release and discharge INTELSAT from its contractual obligations to the Customer and novate such obligations from INTELSAT to the Company.

3.  The Company and INTELSAT desire that the Customer continue its current service commitments made to INTELSAT, and to transfer such commitments to the Company as part of the Privatization, without renegotiating the terms and conditions of such commitments individually prior to the Closing Date.

**FILED** EXHIBIT 1

MAY 2 5 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

05 1046

EXHIBI

4.    In order to facilitate the timely closing of the Privatization, the Customer is willing to continue such commitments and to transfer them to the Company without renegotiation of each individual commitment subject to the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings contained herein, and subject to and on the terms and conditions herein set forth, the Contracting Parties hereto enter into the following AGREEMENT:

1.    **Definitions**

1.1    In this Agreement, unless the context otherwise requires:

*Closing* shall have the meaning ascribed to it in the Restructuring Agreement and shall refer to the date of Privatization of INTELSAT.

*Closing Date* shall have the meaning ascribed to it in the Restructuring Agreement.

*Contract* shall mean each service agreement or arrangement described in Attachment 1 hereto, as supplemented pursuant to the provisions of Section 3 hereof.

*LCO Service Contract* shall have the meaning ascribed to it in Attachment 3 hereto.

*Lifeline Connectivity Obligation (LCO)* shall have the meaning ascribed to it in Attachment 3 hereto.

*Effective Date* shall have the meaning ascribed to it in the Restructuring Agreement.

*Novated Contract* shall mean a Contract which has been novated pursuant to the terms of this Agreement.

*Restructuring Agreement* shall mean the agreement among, inter alia, INTELSAT, its Signatories and Investing Entities which are a party thereto defining the conditions precedent to and transactions necessary for the restructuring of INTELSAT and which will be effective as of the "Effective Date" which is described therein.

*Satellite* shall mean an object located or intended to be located beyond the earth's atmosphere that is used for radio communications.

*Satellite Capacity* shall mean capacity provided by the Company on any Satellite in connection with the provision of services.

*Space Segment* shall mean the Satellites in orbit, and all other related infrastructure owned, leased or operated by or on behalf of the Company to support the operation of the Satellites.

*Terms and Conditions* shall mean the terms and conditions for all Novated Contracts as set forth in Attachment 2 hereto.

1.2     All other defined words and terms shall have the same meanings as those ascribed to them in the Restructuring Agreement.

## 2.    Novation

2.1     The effective date of this Agreement will be the Effective Date.

2.2     For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Contracting Parties hereby agree that with automatic effect from Closing in respect of each Contract, without any further action by or consent of any Contracting Party hereto:

(a)     INTELSAT shall cease to be a party to each Contract and the Company shall become a party to each such Contract in place of INTELSAT;

(b)     the Company undertakes to the Customer to accept, observe, perform and discharge all liabilities and obligations of INTELSAT, howsoever arising under each Contract, in substitution for and to the same extent as INTELSAT, whether arising on, before or after the date of this Agreement as if the Company had at all times been a party to each Contract;

(c)     the Customer accepts the substitution of the Company in place of INTELSAT and agrees that the Company may exercise and enjoy all of the rights of INTELSAT arising under each Contract, in substitution for and to the same extent as INTELSAT, whether arising on, before or after the date of this Agreement as if the Company had at all times been a party to each Contract;

(d)     the Customer absolutely and irrevocably hereby releases and discharges INTELSAT from all claims and demands, and from each of its liabilities and obligations, howsoever arising under each Contract;

(e)     the Customer and the Company each represents and warrants to the other, as of the Closing Date that: (1) the execution, delivery and performance of this Agreement have been duly authorized by

all necessary corporate action on its part; (2) this Agreement constitutes its legal, valid and binding obligations; (3) it has obtained all applicable clearances, licenses, consents and approvals required to be obtained by it that are necessary to perform its obligations under this Agreement; (4) to its knowledge, it is in compliance with, and the performance of its obligations hereunder will not violate or conflict with, any applicable law or regulation of any jurisdiction to which it is subject; and

(f)    the Customer recognizes that any equipment or other property currently provided to the Customer by INTELSAT shall become the property of Intelsat, Ltd. or it subsidiaries upon Closing and the Customer's rights in respect of such property shall be the same as prior to Closing.

## 3.    Amendment of Service Agreements

The Contracting Parties hereby acknowledge and agree that the services provided by INTELSAT, and to be provided by the Company from and after the Closing, to the Customer are the Contracts set forth in Attachment 1 hereto.

Attachment 1 may be supplemented by electronic or other means of delivery (i.e., via e-mail, fax, etc.) by the Company, within 30 days after the Closing, of a supplement to Attachment 1 to Customer to list any amendments, additions or deletions to the Contracts set forth in such Attachment agreed to between the date of execution of this Agreement and the Closing Date. Such supplement to Attachment 1 shall be deemed to be attached hereto and shall supplement Attachment 1 as of the Closing Date. If the Customer does not believe that such supplement is accurate, it shall notify the Company within 30 days of the Customer's receipt of such supplement and such supplement shall be modified as agreed between the Company and the Customer, effective as of the Closing Date.

The Customer hereby appoints the Company as its agent solely for the purpose of so supplementing such Attachment in accordance with the preceding paragraph.

The Contracting Parties hereby acknowledge and agree that from and after the Closing, without any further action by or consent of any of the Contracting Parties hereto, such Novated Contracts will be provided according to the Terms and Conditions. As of the Closing, this Agreement, including the Terms and Conditions, shall amend and supercede in their entirety all other previous agreements, arrangements and understandings between the Contracting Parties, whether written or oral, relating to the provision of such services to the Customer.

4.    **Migration to New Service Orders**

4.1    A Customer shall have the right to request the Company to renegotiate in order to amend, modify or supplement any of the Terms and Conditions applicable to some or all of its Novated Contracts. Any such amendment, modification or supplement (other than an amendment or modification which, pursuant to Part I – Section 9.2 of the Terms and Conditions, will not result in the loss of the protection provided to the Customer (the "MFC Protection") pursuant to Part I – Section 9 "Most Favored Customer (MFC)" of the Terms and Conditions) shall be referred to herein as "migrating" such Novated Contracts.

4.2    If a Customer notifies the Company that it wishes to migrate some or all of its Novated Contracts, then the Company and the Customer agree to engage in good faith negotiations regarding such new terms and conditions to apply to such Novated Contracts.

4.3    All terms and conditions for such Novated Contracts that are migrated to new terms and conditions require the mutual written agreement of the Company and the Customer (and any other applicable customer participating in such Novated Contracts) before the new terms and conditions can be effective.

5.    **Further Assurance**

Each of the Contracting Parties agrees to cooperate at all times from and after the date hereof and to perform (or procure the performance of) all further acts and things, and execute and deliver (or procure the execution and delivery of) such further agreements, releases, notifications and other documents, as may be required by law or as may be necessary or reasonably desirable to implement and/or give effect to the transactions contemplated by this Agreement.

6.    **Counterparts**

This Agreement may be executed in any number of counterparts and by the Contracting Parties to it on separate counterparts, each of which is an original but all of which together constitute one and the same instrument.

7.    **Binding Effect; Assigns**

This Agreement shall be binding upon, and shall inure to the benefit of, the Contracting Parties hereto and their respective successors and permitted assigns.  Any breach of any of the Terms and Conditions with respect to any Novated Contract will not invalidate or otherwise affect the novation of the Contracts pursuant to this Agreement.

8.    **Entire Agreement**

This Agreement constitutes the entire agreement and understanding of the Contracting Parties hereto with respect to the subject matter hereof and supersedes all other agreements and understandings of the Contracting Parties hereto or thereto, whether written or oral.

9.    **Governing Law**

This Agreement and the relationship between the Contracting Parties shall be governed by and construed in accordance with the laws of the District of Columbia, U.S.A. and the Contracting Parties hereby submit to the exclusive jurisdiction of the District of Columbia courts or any United States Federal Court sitting in the District of Columbia.

10.    **Service of Process**

INTELSAT and the Company each hereby appoints CT Corporation, 1025 Vermont Avenue, N.W., Washington, D.C. 20005, and the Customer agrees to appoint an agent for service of process within 30 days of execution of this Agreement and shall notify INTELSAT and the Company promptly of the name and address of such agent, in each case as its authorized agent upon which process may be served in any action arising out of or relating to this Agreement which may be instituted in any District of Columbia court by INTELSAT, the Company or the Customer, as applicable.

11.    **Waiver**

Each of INTELSAT, the Company and the Customer hereby agrees that it shall not, directly or indirectly, in any way challenge or question the validity or enforceability of this Agreement or any of the transactions contemplated hereby, including without limitation asserting any claim whatsoever that this Agreement or any provision hereof or transactions contemplated hereby conflicts with or constitutes a breach of the INTELSAT Agreement or the Operating Agreement or any claim questioning or challenging rapid implementation or provisional application of any amendment to the INTELSAT Agreement or the Operating Agreement.

**12.    Miscellaneous**

12.1    <u>Amendment</u>:  Except as provided in Section 3, with respect to Attachment 1, this Agreement may only be amended (a) to correct any errors or inconsistencies herein, (b) to incorporate any amendments which are also made to each other novation agreement relating to services provided by INTELSAT that are effective as of the Closing Date, (c) to migrate services, as contemplated by Section 4 hereof, or (d) to make any modification to the Terms and Conditions which, pursuant to Part I – Section 9.2 of the Terms and Conditions, will not result in the loss of the MFC Protection, and in each case only if such amendment is in writing and signed by the Contracting Parties hereto; provided that an amendment to the Terms and Conditions will not require the consent of INTELSAT.

12.2    <u>Notices</u>:  Any notice served under this Agreement shall be in writing and shall be given by any two (2) of the following methods:  hand, fax, international courier (such as TNT, DHL or Federal Express) or certified or registered mail to the fax number or address specified in Schedule 1 hereto for each Contracting Party, or such other address or fax number as may be notified by any Contracting Party in writing to the other Contracting Parties.  A notice will be deemed to have been received on the calendar day following the transmission of the notice by fax, the day that it is delivered to the applicable address by hand or international courier or fifteen (15) calendar days after it has been dispatched by certified or registered mail.

**IN WITNESS WHEREOF,** the Contracting Parties hereto have executed or caused to be executed this Agreement as of the date first written above.

**THE INTERNATIONAL TELECOMMUNICATIONS**
    **SATELLITE ORGANIZATION ("INTELSAT")**

By: _____

Printed Name: _____ Ahmed Toumi
                       Director General

Title: _____


**INTELSAT U.K., LTD.**

By: _____

Printed Name: ___ Andrew Stimson
Title: _____ Director, Global Sales Management


**LIBTELCO**

By: LIBERIA TELECOMMUNICATIONS CORP.

Printed Name: CHARLES B. ROBERTS, JR.

Title: MANAGING DIRECTOR

## NOVATION AGREEMENT *Attachment 1*

### Statement of Invoice Procedures

**LIBTELCO**

**Billing Cycle:**     Quarterly in Arrears

## NOVATION AGREEMENT *Attachment 1*
### Transponder Lease Summary as of 13 December 2000

LIBTELCO

---

No Transponder Leases for this Customer.

END of Report
Transponder Lease Summary

Please find attached the detailed presentation of the above listed Leases.
* See Attachment 3 for Designation for LCO Protection

## NOVATION AGREEMENT   Attachment 1
### Carriers & Commitments as of 8 December, 2000

**LIBTELCO**

| Billable Customer | Commitment Information | | | | FEC Beam | Related Service Information | | | Cxr Designator | SO Number CHL Qty |
|---|---|---|---|---|---|---|---|---|---|---|
| | Ltc Term | Serv Type Ltc Ord | ESA Std CXR Size | Ltc Strt Dt / Ltc End Dt | | Orb loc ESA Id | XPD Pair Center Freq | Service SOS | | |
| (RTA) | 15 | IBS 1037494 | 64KB | 29-May-2000 / 28-May-2015 | 1/2 H | 325.5 RFI-01F1 | 105/105 6274.7675 | 29-May-2000 | CONKRY-MONROV 64K001 | 313487 |
| | 5 | IBS 1038566 | 64KB | 15-Mar-2000 / 14-Mar-2001 | 3/4 H | 325.5 WET-01A | 22/12 6068.4950 | 15-Mar-2000 | MONROV-PSCTWY 64K001 | 312690 |
| | 01 | IDR | 512KB | | 3/4 H | 325.5 WET-01A | 23/23 6121.8325 | 09-Jun-1989 | FRANFT-MONROV 8N001 | 309968 |
| | 15 | IDR 1040487 | 2MB | 01-Oct-2000 / 30-Sep-2015 | 3/4 H | 325.5 WET-01A | 24/44 6252.9850 | 15-Jun-1998 | MONROV-WHITEP 30N001 | 305807 |
| | 15 | IDR 1040488 | 1MB | 01-Oct-2000 / 30-Sep-2015 | 3/4 H | 325.5 WET-01A | 23/23 6130.2925 | 20-May-1999 | LONDON-MONROV 15N001 | 309957 |
| (AWIL) | 10 | IDR 1036208 | 2MB | 07-Feb-2000 / 06-Feb-2010 | 3/4 H | 325.5 WEN-01F1 | 24/44 6235.0760 | 07-Feb-2000 | MONROV-WHITEP 30N500 | 312099 |
| | 05 | IDR 1040486 | 2MB | 01-Oct-2000 / 30-Sep-2005 | 3/4 H | 325.5 WET-02F3 | 24/44 6240.9700 | 20-Sep-1997 | MONROV-WORNGE 30N601 | 304229 |
| | 01 | IDR 1038193 | 512KB | 08-Aug-2000 / 07-Aug-2001 | 3/4 H | 325.5 WET-01A | 23/23 6141.5200 | 08-Aug-2000 | MONROV-ROME 8N001 | 313879 |

NOTE: All Digital Carrier Based LTC end dates are provided with 30 days grace period.

**END of Report**
**Carriers & Commitments**

## NOVATION AGREEMENT Attachment 1
### Channels & Commitments as of 8 December, 2000

**LIBTELCO**

| | Commitment Information | | | | Related Service Information | | | | SO Number |
|---|---|---|---|---|---|---|---|---|---|
| Billable | LTC Term | Serv Type | ESA Std | LTC Strt Dt | FEC | Orb Loc | XPD Pair | Service Sos | CHL Qty |
| Customer | | Ltc Ord Id | Cxr Size | LTC End Dt | Beam | ESA Id | Center Freq | CXR Designator | |

**No Channel Service for this Customer**

END of Report
Channels & Commitments

# NOVATION AGREEMENT  Attachment 1

## Occasional Use TV Services after 18 July 2001, as of 8 December 2000

LIBTELCO.

No Occasional Use TV Services for this Customer.

**END of Report**
Occasional Use TV Services



## Supplement to Attachment 1 to the Novation Agreement
### Changes and/or Corrections to Transponder Leases
### For Period from 13 December 2000 through 18 July 2001 Close of Business

LIBTELCO

---

## No Changes for Transponder Leases.

---

**END of Report**
**Supplement to Attachment 1 for Leases**

Detailed presentation of new and changed leases follows.

Note: Changes in the LCO Eligibility status of services listed in the 13 December 2000 portfolio, if any, are detailed and explained in the supplement to attachment 3.

# SUPPLEMENT TO NOVATION AGREEMENT *Attachment 1*

## Activity for Carriers & Commitments through 18 July 2001 Close of Business

**LIBTELCO**

### Ended Commitments

**Commitment Information**

| Billable Customer | Ltc Term | Serv Type Ltc Ord Id | ESA Std CXR Size | Ltc Strt Dt | Effective Ltc End Date |
|---|---|---|---|---|---|
| 01 | | IBS 1038566 | 64KB | 15-Mar-2000 | 14-Mar-2001 |

#### Related Service Information

### New Carrier Services

#### Related Service Information

| Billable Customer | Ltc Term | Serv Type Ltc Ord Id | ESA Std CXR Size | Ltc Strt Dt Ltc End Dt | FEC Beam | Orb loc ESA Id | XPD Pair Center Freq | Service SOS | Cxr Designator | SO Number CHL Qty |
|---|---|---|---|---|---|---|---|---|---|---|
| | | IBS | 512KB | | 3/4 H | 325.50 WET-01A | 22/12 6073.4675 | 01-Dec-2000 | MONROV-WHTSVL 512K001 | 314473 |
| 05 | | IDR 1040486 | 2MB | 01-Oct-2000 30-Sep-2005 | 3/4 H | 325.50 WET-01A | 24/44 6240.9700 | 01-Jan-2001 | MONROV-WORNGE 30N601 | 315877 |

### Ended Carrier Services

#### Related Service Information

| Billable Customer | Ltc Term | Serv Type Ltc Ord Id | ESA Std CXR Size | Ltc Strt Dt Ltc End Dt | FEC Beam | Orb loc ESA Id | XPD Pair Center Freq | Service SOS Cxr End Date | Cxr Designator | SO Number CHL Qty |
|---|---|---|---|---|---|---|---|---|---|---|
| | | IBS | 64KB | | 3/4 H | 325.50 WET-01A | 22/12 6068.4950 | 15-Mar-2000 13-Feb-2001 | MONROV-PSCTWY 64K001 | 312690 |
| | | IDR | 2MB | | 3/4 H | 325.50 WET-02F3 | 24/44 6240.9700 | 20-Sep-1997 31-Dec-2000 | MONROV-WORNGE 30N601 | 304229 |

**END of Report**
**Carriers & Commitments**

## SUPPLEMENT TO NOVATION AGREEMENT *Attachment 1*
### Activity for Channels & Commitments through 18 July 2001 Close of Business

## No Changes in Channels Services and Commitments.

**NOTE: SCPC, TDMA, and VISTA services have no related Center Freq Information.**

**END of Report**
**Channels and Commitments**

LIBTELCO

## SUPPLEMENT TO NOVATION AGREEMENT  *Attachment 1*
### Activity for Occasional Use TV Services through 18 July 2001 Close of Business

**LIBTELCO**

| Txmn ID | Start Date | Times | Total min. | ESA Mode | Orb Loc Id | Xpd | B/W | Billing Method | # Of RX Links | Rate/ Min | Proj. Cost. | Discount | Adjusted Proj. Cost | Termination Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

**No Changes in OUTV Services.**

**END of Report**
**Occasional Use TV Services**

Caveat for all services except those via TS-804@64 deg. W-88/88, which is already digital.

All analog occasional use (OU) dedicated and preemptible global transponders are scheduled for transition to a fully digital platform. This transition is currently scheduled to take place from 28 February 2001 through 31 December 2001. Any services to be added during this time will have to commit to either an 18 MHz or 9 MHz digital resource, i.e. 20 MHz analog resource as each transponder is converted to the service will be cancelled and the OU/OUTV user will be assessed the appropriate resource in the rate tables. Reduction of a service to a 9 MHz digital resource will also be available if the service tariff for the resource would be US$1,800/minute. 9 MHz will reduce the per-minute tariff to US$900/minute (100%). An 18 MHz digital resource will also be available if the tariff for the resource would be US$1,800/minute (100%).

The current digitization timetable is as follows.
Schedule:
* 28 Feb 2001:    No further analog services at 62°E.  TRANSITION COMPLETED
* 31 March 2001:    No further analog services at 60°E.  TRANSITION COMPLETED
* 31 June 2001:    No further analog services at 332.5°E.  TRANSITION COMPLETED
* 30 June 2001:    No further analog services at 395.5°E  TRANSITION COMPLETED
* 31 July 2001:    No further analog services on Channel 3 at 174°E and 176°E
* 31 August 2001:    No further analog services at 55.5°E
* 30 September 2001:    No further analog services at 55.5°E
* 30 November 2001:    No further analog services on Channel 3 at 174°E and 176°E
* 31 December 2001:    No further analog services 1.349°E

This timetable is subject to change based on operational requirements.

Generated on  9 August 2001

The Customer's address and fax number for the service of any notice by the Company under this Agreement shall be:

LIBERIA TELECOMMUNICATIONS CORPORATION
LYNCH STREET
P. O. BOX 10-9039 1000 MONROVIA 10 LIBERIA
FAX: 231 - 226000

Attention:
S.J.M. GARGARD/DMD for TECHNICAL SERVICES

Facsimile:
231 - 226811

Telephone:
231 - 226018

2.    Payment Instructions Under Terms and Conditions.

For the purpose of providing invoices and making payments in connection with Part I – Section 5.5 of the Terms and Conditions, the following shall be used:

For the Customer:

CHARLES B. ROBERTS, JR. - MANAGING DIRECTOR
LIBERIA TELECOMMUNICATIONS CORPORATION
P. O. BOX 10-9039 1000 MONROVIA 10 LIBERIA
FAX: 231 - 226000

Attention:
JOSEPH S. D. SUAH / FINANCIAL COMPTROLLER

Facsimile:
231 - 226005

Telephone:
231 - 226654

For the Company:

Intelsat U.K. Ltd.
Building 3, Chiswick Park
566 Chiswick High Road
LONDON  W4 5YA
United Kingdom

Attention:    The Cashier

Facsimile: +44 208 899 6200
Telephone: +44 208 899 6035

Wire transfers should indicate clearly what is being paid, and should be remitted to the Company's account at:

Citibank London, U.K.
Account: 10265683
Sort Code: 18 50 08

Such payments shall be deemed to be made by delivery of cash, check drawn on the Customer's business account, certified cashier's check, or bank wire transfer. All payments between the Customer and the Company pursuant to this Agreement shall be made in U.S. dollars or such other currency as the Company may agree to.

3.    Notices Under Terms and Conditions.

For the purposes of any notices, reports and other communications in connection with the Terms and Conditions, such notices, reports and other communications shall be in writing and shall be given by and two (2) of the following methods:  hand, fax, international courier (such as TNT, DHL or Federal Express) or certified or registered mail to the fax number or address set forth below:

For the Customer:

CHARLES B. ROBERTS, JR. – MANAGING DIRECTOR
LIBERIA TELECOMMUNICATIONS CORPORATION
P. O. BOX 10-9039 1000 MONROVIA 10 LIBERIA
FAX: 231 – 226000

Attention:
S.J.M. GARGARD/DMD FOR TECHNICAL SERVICES

Facsimile:    231 – 226811

Telephone:    231 – 226018

## SCHEDULE 1

**Contact Information for Notice Purposes and Payment Instructions**

1.    <u>Notices Under Novation Agreement</u>.

For the purpose of the service of any notice under the Novation Agreement (other than under the Terms and Conditions covered under Section 3 below):

INTELSAT's addresses and fax numbers shall be:

International Telecommunications Satellite Organization (I.T.S.O.)
3400 International Drive NW
WASHINGTON, DC 20008-3098
USA

Attention:    Mr. Ahmed Toumi
              Director General


The Company's addresses and fax numbers for the service of any notice under this Agreement shall be:

Intelsat U.K., Ltd
Building 3, Chiswick Park
566 Chiswick High Road
LONDON W4 5YA
United Kingdom

Attention: President

Facsimile: +44 208 899 6200
Telephone: +44 208 899 6035

With a copy to:

Intelsat Services Corporation
3400 International Drive, N.W.
Washington, D.C., 20008-3098
USA

Attention: Office of the General Counsel

Facsimile: +1 202 295 5140
Telephone: +1 202 944 6969

For the Company:     Intelsat U.K., Ltd
                     Building 3, Chiswick Park
                     566 Chiswick High Road
                     LONDON W4 5YA
                     United Kingdom

                     Attention:  President

                     Facsimile: +44 208 899 6200
                     Telephone: +44 208 899 6035

With a copy to:

                     Intelsat Services Corporation
                     3400 International Drive, N.W.
                     Washington, D.C., 20008-3098
                     USA

                     Attention: Office of the General Counsel

                     Facsimile: +1 202 295 5140
                     Telephone: +1 202 944 6969

Any such notice, report, or communication will be deemed to have been received on the calendar day following the transmission of the notice by fax, the day that it is delivered to the applicable address by hand or international courier or fifteen (15) calendar days after it has been dispatched by certified or registered mail.

Each of the Company and the Customer agrees to keep this information current at all times and to notify the other party promptly of any changes to the pertinent information related to invoicing, billing, utilization of the allotted capacity and general communications.

# STATEMENT OF ACCOUNT
## 25-Jan-05

Intelsat Global Sales and Marketing Ltd.
Building 3 Suite 214
Chiswick Park 566 Chiswick High Road
London W45YA United Kingdom
Telephone 44(0)208 899 6035
Fax 44(0)208 899 6194
VAT Number 678 767 556



## Libtelco (#0127)

**Attention: Finance / Accounting Department**
Lynch Street "P.O. Box 10-9039"
1000
Monrovia 10 , Liberia

Wire Transfers Instruction:
Intelsat Global Sales and Marketing Ltd.
Citibank London
Account no.: 10265683
Sort Code: 18 50 08
Swift Code: CITIGB2L
IBAN Code: GB40 CITI 1850 0810 2656 83
Citibank N.A., Citibank House
336 Strand London
WC2R 1HB

### Intelsat Credit Administrator:

Merlyn Symonds
Phone: 441 294-1663
Fax: 441-292-9984
merlyn.symonds@intelsat.com

| Transaction Type | Transaction Number | Invoice Date | Due Date | Original Transaction Amt | Balance Outstanding |
|---|---|---|---|---|---|
| **NCBS-QAAct** | **127-200301-041** | 01-Jan-03 | 17-Mar-03 | $51,250.50 | $30,503.20 |
| **NCBS-QAAct** | **B-1000227** | 01-Apr-03 | 16-Jun-03 | $51,250.50 | $51,250.50 |
| **NCBS-QAAct** | **B-1007065** | 01-Jul-03 | 15-Sep-03 | $51,250.50 | $51,250.50 |
| **NCBS-QAAct** | **B-1014698** | 01-Oct-03 | 15-Dec-03 | $51,250.50 | $51,250.50 |
| **NCBS-QAAct** | **B-1022876** | 01-Jan-04 | 16-Mar-04 | $51,250.50 | $51,250.50 |
| **NCBS-QAAct** | **B-1031800** | 01-Apr-04 | 15-Jun-04 | $51,250.50 | $51,250.50 |
| **NCBS-QAAct** | **B-1041234** | 01-Jul-04 | 14-Sep-04 | $51,250.50 | $51,250.50 |
| **Termination** | **M-1004628** | 16-Sep-04 | 16-Sep-04 | $1,238,568.13 | $1,238,568.13 |
| **LPI Chg. Invoice** | **I-76621** | 17-Sep-04 | 17-Sep-04 | $4,506.75 | $4,506.75 |
| **NCBS-QAAct** | **B-1051899** | 01-Oct-04 | 15-Dec-04 | $45,252.38 | $42,708.75 |

| Current Due | 1 to 30 Days | 31 to 60 Days | 61 to 90 Days | Greater Than 90 Days | Total Due |
|---|---|---|---|---|---|
| **$0.00** | **$0.00** | **$42,708.75** | **$0.00** | **$1,581,081.08** | **$1,623,789.83** |

EXHIBIT 2

05 1046

# FILED

MAY 2 5 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

If you have any questions regarding this statement please contact your Intelsat Credit Administrator (Merlyn Symonds).

This statement reflects all transactions posted to the abovementioned account as at 24/01/2005.